UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| II IN ONE CONTRACTORS, INC. | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) No: 05 C 3264 |
| KAJIMA ENGINEERING & CONSTRUCTION, INC. | ) Judge John W. Darrah |
| Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

The Plaintiff/Counter-Defendant, II in One Contractors, Inc. ("II in One") brought this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, against the Defendant/Counter-Plaintiff, Kajima Engineering & Construction, Inc. ("Kajima"). Currently before the Court are the parties' cross motions for summary judgment. Both motions for summary judgment hinge upon a determination of whether the arbitration award, entered in favor of II in One on April 28, 2005, should be vacated.

## BACKGROUND

In August 1995, the City of Chicago awarded Kajima a contract (the "Prime Contract") for construction of a fresh-water tunnel under 79th Street from Vincennes to Kedzie Avenue on the south side of Chicago. (Kajima's 56.1(a)(3) Statement ¶ 5). The Prime Contract included an attachment, "Special Condition Regarding Minority Business Enterprise ["MBE"] Commitment

1

and Women Business Enterprise ["WBE"] Commitment," which referenced, and incorporated into the Prime Contract, the requirements of the City's Minority Business Enterprise Ordinance, Municipal Code of Chicago § 2-92-420. (Kajima's 56.1(a)(3) Statement ¶ 6). The MBE/WBE ordinance established an overall goal of annually awarding not less than 25 percent and 5 percent of the total annual dollar value of all City contracts to MBEs and WBEs, respectively. (Special Condition, at 1). It also gave incentives to contractors who contracted with MBEs and/or WBEs. (Special Condition). Under the City Ordinance and regulations promulgated thereunder, to participate in the program either directly or as a subcontractor, a minority and women-owned business was required to be certified as an MBE/WBE by the City of Chicago. (Special Condition, at 2). The Plaintiff/Counter-Defendant to this suit, II in One, was a certified MBE.

In September 1995, Kajima subcontracted with II in One to furnish and install rebar necessary for the construction of the 79th Street tunnel. (Kajima's 56.1(a)(3) Statement ¶ 7). In part, Kajima entered into the "Standard Subcontract Agreement" (the "Subcontract") with II in One to satisfy the City's MBE Ordinance. (Id., ¶ 9). Article 1 of the Subcontract between Kajima and II in One expressly incorporated, and made a part of the Subcontract, the Prime Contract between the City and Kajima, including the special condition regarding the MBE. (Id., ¶ 8). The Subcontract also included an arbitration clause. (II in One's 56.1(a)(3) Statement ¶ 7). Shortly after the Subcontract was signed, II in One began the rebar work. (Kajima's 56.1(a)(3) Statement ¶ 10). Around October 1997, a dispute arose between II in One and Kajima concerning scheduling and the composition of II in One's crews. (Id., ¶ 11). II in One discontinued the rebar work with respect to one aspect of the tunnel project at the end of October 1997. (Id., ¶ 11).

Over six years later, on January 13, 2004, the City sent a letter to II in One, informing it that, according to a City audit, Kajima had not fully met its MBE compensation commitment to II in One and appeared to owe II in One an additional amount of the MBE commitment. (Kajima's 56.1(a)(3) Statement ¶ 12). The City's letter advised II in One that it could file an arbitration claim to attempt to recover this MBE shortfall. (Kajima's 56.1(a)(3) Statement ¶ 12). Approximately two weeks later, on January 29, 2004, II in One filed a Demand for Arbitration against Kajima with the American Arbitration Association Commercial Arbitration Panel ("AAA"), claiming damages for the non-performance of the Subcontract. (Id., ¶ 13; II in One's 56.1(a)(3) Statement ¶ 8).

Subsequently, Kajima filed a Motion to Dismiss the Arbitration based on the statute of limitations. (II in One's 56.1(a)(3) Statement ¶ 8). On June 23, 2004, the AAA arbitrator, Margery Newman, denied Kajima's Motion to Dismiss Arbitration. (Id., ¶ 9). Thereafter, each of the parties filed Amended Demands for Arbitration; and Kajima filed a Counterclaim. (Id., ¶¶ 8-9).

The arbitrator heard testimony and received evidence in this matter from February 15, 2005 through February 18, 2005. (II in One's 56.1(a)(3) Statement ¶ 11). On February 24, 2005, at the close of oral testimony, Arbitrator Newman wrote to Kajima and II in One, stating, "It will be necessary to address the issue of the unconstitutionality of the City of Chicago's Affirmative Action Ordinance, and what impact, if any, it has on the damage claim in this case." (Letter attached to Kajima's Motion to Supplement the Record, at 1). Following the hearing of the evidence in the arbitration, Kajima filed a Final Argument. (Id., ¶ 18).

On April 28, 2005, an award of Arbitrator was entered in favor of II in One and against Kajima in the amount of $278,509.62. (Id., ¶¶ 5, 12). The award provides that Kajima is entitled to a setoff in the sum of $4,473.15. (Id., ¶ 12). The arbitrator awarded II in One attorney's fees for two hours, for which II in One was charged $600.00 ($300.00 per hour), and $1,000.00 as an adjustment of the administrative fee as costs. (Id., ¶¶ 12-14). The award was not based on the Prime Contract's MBE/WBE Special Condition; in fact, the award specifically ruled against II in One in favor of Kajima on II in One's claim for relief based on the breach of the MBE/WBE Special Condition. (Id., ¶ 21).

On April 27, 2005, II in One demanded payment from Kajima. (II in One's 56.1(a)(3) Statement ¶ 16). To date, Kajima has failed to pay all, or any part, of the arbitration award. (Id., ¶ 17).

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

4

## ANALYSIS

Kajima and II in One both filed motions for summary judgment. Kajima asserts that the award should be vacated on the grounds that: (1) the award violates public policy of the United States, and (2) the award was based on a manifest disregard of the law, on the part of the Arbitrator, as it relates to timeliness. II in One argues that the award should not be vacated and that both grounds asserted by Kajima should be rejected. Thus, both parties' motions can be resolved by addressing the issues raised by Kajima.

The Federal Arbitration Act gives federal courts sitting in the district where the award was entered the authority to "make an order" either "vacating the award" (Section 10) or "modifying or correcting the award" (Section 11) "upon the application of any party to the arbitration." 9 U.S.C. §§ 10-11. Section 10 provides that the court may vacate the award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Section 11 of the Arbitration Act gives this Court the ability to modify or correct an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

5

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

A court's rule in reviewing an arbitrable award is quite limited and apart from general reasons for setting aside an arbitrable award found in the Federal Arbitration Act, 9 U.S.C. § 10; the court may consider only whether an arbitrator exceeded the scope of the authority confirmed upon the arbitrator by the parties' actions and agreements. *Butler Manufacturing Co. v. United Steel Workers of America*, 336 F.3d 629, 632 (7th Cir. 2003) (*Butler Manufacturing Co.*).

In combination, these provisions provide, with few exceptions, that as long as the arbitrator does not exceed his delegated authority, the award will be enforced; and this is true even if the arbitrator's award contains a serious error of law. *Butler Manufacturing Co.*, 336 F.3d at 632. However, even though an error of law is a not a ground listed in Sections 10 or 11, federal courts have held that an arbitrator's "manifest disregard" of legal rules justifies judicial intervention. *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001) (*Watts*). *Watts* narrowed the "manifest disregard" doctrine to "two possibilities: an arbitral order requiring the parties to violate the law (as by employing unlicensed truck drivers), and an arbitral order that does not adhere to the legal principles specified by contract, and hence unenforceable under § 10(a)(4)." *Watts*, 248 F.3d at 581.

*Void Law*

Kajima argues that the arbitrator manifestly disregarded the law because, it argues, the award was based on the MBE/WBE program. According to Kajima, on February 19, 2004, just weeks after II in One filed its arbitration demand, United States District Court Judge Moran, sitting in the Northern District of Illinois, declared the MBE/WBE program "unconstitutional, invalid and unenforceable with respect to construction contracts because the MBE/WBE Program is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983." *Builders Assoc. of Greater Chicago v. City of Chicago*, 2004 WL 757697 (N.D. Ill. Feb. 19, 2004) (Minute Order). Kajima argues that the effect of the arbitration award is to enforce the provisions of the City's MBE ordinance that Judge Moran found unconstitutional and orders the parties to disobey the law. Further, Kajima argues that a contract based on this unconstitutional statute or ordinance is void and creates no obligations, citing *Township of Elmwood v. Marcy*, 92 U.S. 289 (1875).

The *Builders Association* opinion does not void that Subcontract; it does no more than enjoin the City of Chicago from *prospectively* enforcing its MBE/WBE ordinance and does not affect prior contracts or subcontracts entered into as part of the MBE/WBE program. Thus, the parties' privately bargained-for rights are enforceable.

The history of the *Builders Association* case and the court's opinion and orders supports this analysis. In 1996, the *Builders Association* plaintiff sued the City of Chicago to challenge the City's construction contract set-aside programs. A lengthy bench trial ensued before Judge Moran. Following the trial, on December 29, 2003, Judge Moran issued an extensive and comprehensive opinion and order, ruling in favor of the Builders Association and against the

7

City. *Builders Ass'n of Greater Chicago v. City of Chicago*, 298 F. Supp.2d 725, 726 (N.D. Ill. 2003) (Memorandum Opinion and Order). In that Memorandum Opinion and Order, the court carefully traced the history of the MBE/WBE program and the history of discrimination in the construction industry in the City of Chicago, concluding, ultimately, that in its present form, the MBE/WBE was unconstitutional. *Builders Ass'n* Memorandum Opinion and Order, 298 F. Supp.2d at 742. Three weeks later, Judge Moran entered an injunction in a brief, one-page minute order. *Builders Ass'n*, 2004 WL 757697. This is the Minute Order cited by Kajima, and referred to above, in support of Kajima's contention that the holding of the case should be retroactively applied to void the Subcontract entered into by Kajima and II in One. However, the Memorandum Opinion and Order, not the Minute Order, is a complete statement of the court's reasoning and ultimate ruling; there, the court held:

> The City program in its present guise cannot stand. *I do not doubt that the original program was well intentioned and that, at least for some of the classifications, there was strong evidence of discrimination in the Chicago area construction industry justifying bold remedial measures.* Viewed through the prism of 2003, however, I cannot conclude that the present program is narrowly tailored to remedy past discrimination and the discrimination demonstrated to now exist. An appropriate injunction order will be entered, and plaintiff should submit such an order. I will, however, *delay the effective date for six months from now.*

*Builders Ass'n*, 298 F. Supp.2d at 742 (emphasis added). The court examined the MBE/WBE program as it applied to the Chicago construction industry of 2003, not 1995 (when Kajima and II in One entered into the Subcontract) or 1997 (when the breach allegedly occurred). This and the court's six-month stay of enforcement of its order support II in One's position that the ruling was to apply prospectively and was not intended to retroactively invalidate private contracts.

8

Further, that the arbitration award is not based in any way on a party's failure to comply with the MBE/WBE percentages but, rather, on a finding of a breach of the Subcontract belies Kajima's position that the *Builders Association* case should be applied to retroactively invalidate the parties' privately bargained-for rights. For this reason, Kajima's challenge to the arbitration award on the grounds that it violates public policy fails.

*Timeliness*

Kajima next argues that the arbitrator further disregarded the law when she refused to dismiss II in One's arbitration claim as time barred under, what it asserts is, the applicable statute of limitations, 735 ILCS 5/13-214, which requires actions based upon a construction contract to be commenced within four years from the time the person bringing the action knew or should reasonably have known of the breach of contract. Kajima takes the position that the arbitrator should have applied Illinois law at 735 ILCS 5/13-214, which provides that an action based on a construction contract must be commenced within four years "from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission," for the statute of limitations in a construction contract. 735 ILCS 5/13-214 (a). However, II in One responds that Illinois law, at 735 ILCS 5/13-207, provides that filing a counterclaim (as Kajima did in the arbitration) waives the statute of limitations objection as to the original complaint. Kajima counters that Section 13-207 (waiver) is a procedural rule that only applies to lawsuits in Illinois not arbitrations filed with the AAA, which has its own procedural rules; but Section 13-214 (limitations) does apply to AAA arbitrations. Kajima cites no authority for this novel, and inherently inconsistent, argument. Either both sections are operative or neither is. In either event, Kajima's argument fails.

9

Even if this were not the case, in light of Kajima's failure to cite any authority for its position that the arbitration is untimely, Arbitrator Newman's failure to adopt it cannot be said to have been a manifest disregard of the law regarding the issue of timeliness. As noted above, if Arbitrator Newman did not exceed her delegated authority, the award will be enforced, even if the arbitrator's award contains a serious error of law but not a "manifest disregard" of the law. *Butler Manufacturing Co.*, 336 F.3d at 632. *Watts*, 248 F.3d 581. Here, viewing the facts in the light most favorable to the nonmoving party, no reasonable fact finder could find that there was a manifest disregard of the law.

## CONCLUSION

Based on the above, Plaintiff/Counter-Defendant's, II in One's, Cross-Motion for Summary Judgment is granted; and Defendant/Counter-Plaintiff's, Kajima's, Cross-Motion for Summary Judgment is denied.

Dated: January 25 2006

JOHN W. DARRAH
United States District Court Judge